**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF GEORGIA
STATESBORO DIVISION**

JUAN ENRIQUEZ MARROQUIN,

    Plaintiff,

v.

CORE CIVIC, INC.; and OFFICER LOCKE,

    Defendants.

CIVIL ACTION NO.: 5:18-cv-86

## **ORDER AND MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION**

Plaintiff brought this action under 42 U.S.C. § 1983 while incarcerated Coffee Correctional Facility in Nicholls, Georgia, to challenge certain conditions of his confinement. Doc. 1. After a thorough and careful review of the record, I **RECOMMEND** the Court **DISMISS without prejudice** Plaintiff's Complaint, doc. 1, **DIRECT** the Clerk of Court to **CLOSE** this case and enter the appropriate judgment of dismissal, and **DENY** Plaintiff leave to proceed *in forma pauperis* on appeal.[1] I **DENY as moot** Plaintiff's Motion to Preserve Evidence, doc. 8.

---

[1] A "district court can only dismiss an action on its own motion as long as the procedure employed is fair. . . . To employ fair procedure, a district court must generally provide the plaintiff with notice of its intent to dismiss or an opportunity to respond." Tazoe v. Airbus S.A.S., 631 F.3d 1321, 1336 (11th Cir. 2011) (citations and internal quotations marks omitted). A magistrate judge's report and recommendation provides such notice and opportunity to respond. See Shivers v. Int'l Bhd. of Elec. Workers Local Union 349, 262 F. App'x 121, 125, 127 (11th Cir. 2008) (indicating that a party has notice of a district court's intent to *sua sponte* grant summary judgment where a magistrate judge issues a report recommending the *sua sponte* granting of summary judgment); Anderson v. Dunbar Armored, Inc., 678 F. Supp. 2d 1280, 1296 (N.D. Ga. 2009) (noting that report and recommendation served as notice that claims would be *sua sponte* dismissed). This Report and Recommendation constitutes fair notice to Plaintiff that his suit is due to be dismissed. As indicated below, Plaintiff will have the opportunity to present his objections to this finding, and the presiding district judge will review de novo properly submitted objections. See 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72; see also Glover v. Williams, No. 1:12-CV-3562, 2012 WL 5930633, at *1 (N.D. Ga. Oct. 18, 2012) (explaining that magistrate judge's report and recommendation

**BACKGROUND**

Plaintiff alleges Defendant Locke discharged CS spray into Plaintiff's face on September 8, 2018 around 5:14 a.m. while Plaintiff was in his cell in building 8-RR. Doc. 1 at 5; Doc. 1-1 at 2–3. He writes that there was "no reason" for Defendant Locke to discharge the CS spray because, at the time Defendant did so, Plaintiff was "sitting quietly on [his] bottom bunk and eating [from his] food tray." Doc. 1 at 5; Doc. 1-1 at 2–3. The CS spray caused Plaintiff to experience pain in his lungs and chest. Doc. 1 at 5; Doc. 1-1 at 2–3. Plaintiff requested medical help, but no help was provided until around 6:25 a.m. Doc. 1 at 5; Doc. 1-1 at 2–3. His breathing did not improve, and he required additional medical treatment that day around 12:18 p.m. Doc. 1 at 5; Doc. 1-1 at 2–3. The prison nurse "advised" Plaintiff "to go to sick call" for acid reflux on September 8, 2018 and ordered an x-ray on September 26, 2018. Doc. 1 at 5; Doc. 1-1 at 2–3. Plaintiff required medical treatment for trouble breathing again on October 2, 2018 and October 18, 2018. Id.; Doc. 1-1 at 2–3. Plaintiff avers that prison officials "knew" he had been diagnosed with tuberculosis in 2016, that he did not receive treatment for that condition, and that his lungs are weak. Doc. 1 at 5; Doc. 1-1 at 2–3.

Plaintiff filed this action on November 6, 2018. Doc. 1. As relief, Plaintiff requests a declaratory judgment, preliminary and permanent injunctions, $150,000 in compensatory damages, $100,000 in punitive damages, court costs, and "any additional relief this [C]ourt deems just, proper, and equitable." Doc. 1 at 6; Doc. 1-1 at 4. On December 26, 2018, Plaintiff

---

constituted adequate notice and petitioner's opportunity to file objections provided a reasonable opportunity to respond).

filed a Motion requesting the Court order Defendants to preserve the videotaped evidence of his alleged assault by Officer Locke.[2]  Doc. 8.

**I.     Proper Exhaustion Under § 1997(a)**

    **A.     PLRA's Exhaustion Requirement**

Under the Prison Litigation Reform Act ("PLRA"), an incarcerated individual must properly exhaust all available administrative remedies—the prison's internal grievance procedures—before filing a federal lawsuit to challenge prison conditions.  42 U.S.C. § 1997e(c)(1); see Jones v. Bock, 549 U.S. 199, 202 (2007); Harris v. Garner, 216 F.3d 970, 974 (11th Cir. 2000).  The purpose of the PLRA's exhaustion requirement is to "afford corrections officials time and opportunity to address complaints internally before allowing the initiation of a federal case."  Whatley v. Warden, Ware State Prison (Whatley I), 802 F.3d 1205, 1208 (11th Cir. 2015) (quoting Woodford v. Ngo, 548 U.S. 81, 93 (2006)).

Proper exhaustion is mandatory, and courts have no discretion to waive it or excuse it based on improper or imperfect attempts to exhaust, no matter how sympathetic the case or how special the circumstances.  Ross v. Blake, 136 S. Ct. 1850, 1857 (2016) (finding that the PLRA requires exhaustion "irrespective of any 'special circumstances'" and its "mandatory language means a court may not excuse a failure to exhaust, even to take such circumstances into account"); Jones, 549 U.S. at 211 ("There is no question that exhaustion is mandatory under the PLRA and that unexhausted claims cannot be brought in court.").  While inmates are not required to specially plead or demonstrate exhaustion in their complaint, courts must dismiss complaints *sua sponte* "for failure to exhaust if the lack of exhaustion appears on the face of the complaint."  Burns v. Warden, USP Beaumont, 482 F. App'x 414, 416 (11th Cir. 2012) (quoting

---

[2]    Plaintiff attached to his Motion two declarations from fellow inmates attesting to his version of events.  Docs. 8-1, 8-2.

3

Bingham v. Thomas, 654 F.3d 1171, 1175 (11th Cir. 2011)); see also Jones, 549 U.S. at 214–16; Pearson v. Taylor, 665 F. App'x 858, 867 (11th Cir. 2016); Okpala v. Drew, 248 F. App'x 72, 73 (11th Cir. 2007) ("When an affirmative defense appears on the face of a prisoner's complaint, thereby revealing that the prisoner cannot state a claim, the PLRA continues to require a district court to dismiss the complaint."); Malcolm v. Doe, No. 6:18-cv-24, 2018 WL 2108108, at *4 (S.D. Ga. Mar. 19, 2018).

Proper exhaustion requires strict compliance with the prison's administrative policies, deadlines, and other critical procedural rules. Woodford v. Ngo, 548 U.S. 81, 91 (2006). "[A]n inmate alleging harm suffered from prison conditions must file a grievance and exhaust the remedies available under that procedure *before* pursuing a § 1983 lawsuit." Smith v. Terry, 491 F. App'x 81, 83 (11th Cir. 2012) (emphasis retained) (quoting Brown v. Sikes, 212 F.3d 1205, 1207 (11th Cir. 2000); Gooch v. Tremble, No. 1:18-cv-058, 2018 WL 2248750, at *3 (S.D. Ga. Apr. 20, 2018) ("[B]ecause exhaustion of administrative remedies is a 'precondition' to filing an action in federal court, Plaintiff had to complete the entire administrative grievance procedure *before* initiating this suit." (emphasis retained) (quoting Higginbottom v. Carter, 223 F.3d 1259, 1261 (11th Cir. 2000))). An incarcerated individual cannot "cure" an exhaustion defect by properly exhausting all remedies after filing suit. Terry, 491 F. App'x at 83; Harris, 216 F.3d at 974. Moreover, courts may not consider the adequacy or futility of the administrative remedies afforded to the inmate. Higginbottom, 223 F.3d at 1261 (noting that an inmate's belief that administrative procedures are futile or needless does not excuse the exhaustion requirement). Rather, courts may only determine whether administrative remedies are available and whether the inmate properly exhausted these remedies prior to bringing his federal claim. Id.

Moreover, to properly exhaust, prisoners must do more than simply initiate grievances; they must also appeal any denial of relief through all levels of review that comprise the administrative grievance process. Bryant v. Rich, 530 F.3d 1368, 1378 (11th Cir. 2008) ("To exhaust administrative remedies in accordance with the PLRA, prisoners must 'properly take each step within the administrative process.'" (quoting Johnson v. Meadows, 418 F.3d 1152, 1157 (11th Cir. 2005))); see also Okpala, 248 F. App'x at 73 (affirming sua sponte dismissal for failure to exhaust when a federal inmate submitted a written complaint and appealed the decision but filed his lawsuit before receiving the final decision on his appeal); Sewell v. Ramsey, No. CV406-159, 2007 WL 201269 (S.D. Ga. Jan. 27, 2007) (finding that a plaintiff who is still awaiting a response from the warden regarding his grievance is still in the process of exhausting his administrative remedies).

The policies of the particular institution determine what is necessary to fully exhaust all administrative remedies. Jones, 549 U.S. at 218; Bracero v. Sec'y, Fla. Dep't of Corr., No. 17-14278, 2018 WL 3861351, at *1 (11th Cir. Aug. 14, 2018) ("To satisfy the exhaustion requirement, a prisoner must complete the administrative process in accordance with the applicable grievance procedures established by the prison."). However, "[p]roper exhaustion generally does not require that a prisoner resort to optional administrative procedures to address prison conditions." Trevari v. Robert A. Deyton Det. Ctr., 729 F. App'x 748, 752 (11th Cir. 2018) (citing Dimanche v. Brown, 783 F.3d 1204, 1210 (11th Cir. 2015)).

### B. The Georgia Department of Corrections' ("GDC") Administrative Remedies

Coffee Correctional Facility utilizes the GDC's procedures for prisoner grievances.[3] The GDC's "prison grievance procedures are set out in a standard operating procedure." Whatley I,

---

[3] The grievance records Plaintiff submitted with his Complaint, as well as records in past cases before this Court, demonstrate that Coffee Correctional Facility utilizes the GDC's Standard Operating

5

802 F.3d at 1208. Standard Operating Procedure ("SOP") IIB05-0001 contains the GDC's policy for general grievances, including grievances for excessive force and retaliation. See Whatley v. Smith (Whatley II), 898 F.3d 1072, 1074 (11th Cir. 2018) ("To exhaust administrative remedies under the Georgia Department of Corrections Standard Operating Procedures ("SOP"), inmates must follow the . . . prison grievance process outlined in SOP IIB05-0001."). Because the alleged incident occurred on September 8, 2018, the applicable grievance procedure in this case is the version of SOP IIB05-0001 which took effect on June 28, 2018.[4]

---

Procedure for inmate grievances. Doc. 1-2 at 1–9 (utilizing the GDC's grievance forms and procedures); Malone v. Jones, No. 5:17-cv-124, 2017 WL 5197039, at *4 (S.D. Ga. Oct. 3, 2017) (demonstrating that SOP IIB05-0001 governs the grievance process in Coffee Correctional Facility); Compton v. Perry, No. 5:14-CV-96, 2016 WL 593650, at *3 (S.D. Ga. Feb. 12, 2016); Rasheed v. Goodrich, No. 5:11-cv-086, 2012 WL 3073028, at *2 (S.D. Ga. May 15, 2012); see, e.g., Thompson v. Corr. Corp. of Am. (Thompson II), 485 F. App'x 345, 349–50 (11th Cir. 2012) (discussing Coffee Correctional Facility's grievance procedure); Thompson v. Corr. Corp. of Am. (Thompson I), No. 5:10-cv-069 (S.D. Ga.), ECF 65-1 (showing that Coffee Correctional Facility utilizes GDC's grievance policy); see also United States v. Rey, 811 F.2d 1453, 1457 n. 5 (11th Cir.1987) (recognizing that court can take judicial notice of its own records); Evans v. Marshall, No. 1:05-cv-132, 2007 WL 842056, at *5 (S.D. Ga. Mar. 15, 2007); Hatch v. Burke Cty. Jail, No. 1:06-cv-080, 2006 WL 2660162, at *2 (S.D. Ga. Sept. 14, 2006) (dismissing for failure to exhaust when plaintiff-inmate alleged no grievance procedure existed because the court took judicial notice of another case in the same District where a plaintiff at the same prison had used that prison's grievance procedure).

[4] The Court may also take judicial notice of existence and content of grievance procedures at a particular jail or prison. See Jones v. Johnson, No. 3:18-cv-070, 2019 WL 2386978, at *4 (S.D. Ga. May 6, 2019) (determining, "[b]ased on the date of the alleged incidents," which version of SOP IIB05-0001 applied to the prisoner-plaintiff's complaint); Sullivan v. Powell, No. 3:17-cv-017, 2018 WL 3766686, at *3 (S.D. Ga. July 6, 2018) (same); see also Crespo v. Fla. Comm'n on Offender Review, No. 4:16-cv-471, 2017 WL 1237985, at *5 (N.D. Fla. Mar. 9, 2017) (taking judicial notice of what the "the Florida Department of Corrections' inmate grievance procedure permits inmates to" do to file a grievance); Battle v. Collier Cty. Sheriff's Office, No. 2:14-cv-98, 2014 WL 905483, at *3 (M.D. Fla. Mar. 6, 2014) ("The Court takes judicial notice of the rules promulgated by the Collier County Sheriff's Office regarding inmate grievances."); Woods v. Kulpeskov, No. 2:06-cv-516, 2007 WL 45642, at *2 (M.D. Fla. Jan. 5, 2007) (taking "judicial notice that the Florida Department of Corrections provides a three-step grievance procedure" and discussing the steps of that procedure); Smith v. Polk County, No. 8:05-cv-884, 2005 WL 1309910, at *3 (M.D. Fla. May 31, 2005) ("The Court takes judicial notice of Polk County Department of Detention Inmate Handbook . . . which confirms that there is a grievance procedure available to inmates [and which] details the inmate grievance procedure, stating, in pertinent part . . . .").

The grievance procedure outlined in SOP IIB05-0001 is a two-step process. Malcolm, 2018 WL 2108108, at *3; Shaw v. Toole, No. 6:14-CV-48, 2015 WL 4529817, at *5 (S.D. Ga. July 27, 2015). To properly exhaust, incarcerated individuals must properly fulfill the requirements of both steps. Johnson v. Meadows, 418 F.3d 1152, 1157 (11th Cir. 2005). First, inmates must file a grievance within 10 days of becoming aware of the facts from which the grievance arises. Whatley II, 898 F.3d at 1075; Clark v. Kilpatrick, No. 6:18-cv-68, 2019 WL 356807, at *3 (S.D. Ga. Jan. 29, 2019); Toole, 2015 WL 4529817, at *5. Once a grievance is accepted for processing, the warden has up to 40 days to review the grievance and determine whether to grant or deny it. Toole, 2015 WL 4529817, at *5.

If a grievance is denied or goes unanswered, the inmate is required to appeal the denial or non-response after the warden's time to answer expires. Id. ("An inmate can file an appeal with the Commissioner's Office in the following instances: if the grievance coordinator rejects his original grievance; after the warden responds to the original grievance; or when the time allowed for the warden's decision has expired."); Clark, 2019 WL 356807, at *3–4. "The inmate has seven calendar days from the date he receives the response to the grievance to file a Central Office Appeal."[5] Wright v. Fish, No. 3:19-cv-003, 2019 WL 2721222, at *6 (S.D. Ga. May 14, 2019). "The Commissioner or his designee then has 120 calendar days after receipt of the grievance appeal to deliver a decision to the offender, at which time the grievance procedure is complete." Id.

---

[5] Under the 2018 revisions of SOP IIB05-0001, the Central Office has 120 days to respond. Wright v. Fish, No. 3:19-cv-003, 2019 WL 2721222, at *6 (S.D. Ga. May 14, 2019); Humphrey v. Allen, No. 1:19-cv-6, 2019 WL 1450555, at *3 (S.D. Ga. Feb. 5, 2019). Older versions of the SOP provided only 100 days or 90 days. Wright v. Harper, No. 5:16-cv-450, 2018 WL 3219450, at *5 (M.D. Ga. June 29, 2018) (100 days); Terry, 491 F. App'x at 82–83 (90 days). As explained below, Plaintiff waited less than 20 days from the date of the warden's denial of his grievance before filing this suit. That short duration is inadequate under any version of the SOP.

Here, it is clear from the face of Plaintiff's Complaint and the materials submitted with it that Plaintiff failed to properly exhaust all available administrative remedies before filing this action. Plaintiff states that the incident occurred on September 8, 2018. Doc. 1 at 5. He submitted a timely grievance on September 10, 2018. Doc. 1 at 3; Doc. 1-1 at 3; Doc. 1-2 at 1 (showing prison officials received Plaintiff's grievance on September 10, 2018). He received the warden's response denying his grievance on October 15, 2018. Doc. 1-1 at 3; Doc. 1-2 at 2. He appealed the warden's denial of his grievance to the Central Office that same day. Doc. 1-1 at 3; Doc. 1-2 at 4. Plaintiff writes that he "received no response" to his appeal. Doc. 1 at 4; Doc. 1-1 at 3. Plaintiff then filed this action, which the Clerk's Office received and docketed on November 6, 2018.[6]

Plaintiff waited less than 20 days after appealing the warden's denial to the Central Office before filing an action in federal court. Plaintiff did not wait to receive a response to his appeal or until the time for a response elapsed. Although Plaintiff filed an appeal, he failed to "properly take each step within the administrative process." Johnson, 418 F.3d at 1157. Incarcerated individuals do not exhaust simply by filing an appeal; rather, they are required to wait for a response to that appeal. Terry, 491 F. App'x at 82–83 (finding the plaintiff "failed to exhaust his administrative remedies" when he "failed either to receive the . . . denial of his appeal or to wait the requisite 90 days before filing his section 1983 complaint"); Wheeler v. Philbin, No. 1:18-cv-084, 2018 WL 3421603, at *3 (S.D. Ga. June 18, 2018) (dismissing for

---

[6] "The prison mailbox rule provides that a *pro se* prisoner's legal submission is considered filed on the date it is delivered to prison authorities for mailing." Forde v. Miami Fed. Dep't of Corr., 730 F. App'x 794, 800–01 (11th Cir. 2018). Plaintiff signed his Complaint on October 30, 2018. Doc. 1 at 6. The envelope was postmarked November 2, 2018. Doc. 1-3 at 1. Thus, Plaintiff filed his Complaint sometime between October 30 and November 2. For purposes of this Report and Recommendation, the Court considers Plaintiff's Complaint filed on November 2, 2018. Notably, Plaintiff failed to exhaust his administrative remedies under any of the dates discussed (the date received by the Clerk's Office, the postmarked date, or the date signed).

8

failure to exhaust when it was "plain from the face of the amended complaint Plaintiff failed to complete the entire grievance process prior to submitting [his] complaint[] as the grievance appeal is still pending").

Proper exhaustion occurs only after the inmate receives a response to the final level appeal or when the time for prison officials to respond has elapsed. Terry, 491 F. App'x at 82–83; Okpala, 248 F. App'x at 73; Wright v. Harper, No. 5:16-cv-450, 2018 WL 3219450, at *5 (M.D. Ga. June 29, 2018) (dismissing an action when plaintiff filed his § 1983 action "a mere 20 days after filing his appeal" of the warden's decision to the central office and "submitted his [c]omplaint while his grievance appeal was still pending" (citations omitted)); Gooch, 2018 WL 2248750, at *3 ("It is plain from the face of the complaint Plaintiff failed to complete the entire grievance process prior to submitting the complaint as the grievance appeal is still pending."); Holland v. Anderson, No. 5:16-cv-88, 2017 WL 3827475, at *3 (M.D. Ga. July 14, 2017) (dismissing an action when plaintiff "received a decision denying his grievance on February 3, 2016," and then filed "a central office appeal on February 10, 2016" because plaintiff filed his lawsuit "during the pendency of the 100-calendar-day decision period for his central office appeal, before the full administrative procedure had been exhausted").

Finding otherwise (that inmates properly exhaust their administrative remedies simply by *filing* an appeal at the last remaining level of review) would contravene the purpose of the exhaustion requirement. "The requirement that the exhaustion of remedies occur 'first in an agency setting'" is intended to give prisons the "chance to discover and correct [their] own errors." Green v. Sec'y for Dep't of Corr., 212 F. App'x 869, 871 (11th Cir. 2006) (quoting Alexander v. Hawk, 159 F.3d 1321, 1327 (11th Cir. 1998)); see also Woodford, 548 U.S. at 93

(observing that the exhaustion requirement allows "corrections officials time and opportunity to address complaints internally before allowing the initiation of a federal case").

Here, because Plaintiff did not wait for his appeal to be denied (or for the requisite time to elapse) before filing in federal court, the Court has no way of knowing whether the Central Office reversed the denial of Plaintiff's grievance during the time this lawsuit has been pending. Moreover, the law does not allow Plaintiff to save this case from dismissal by demonstrating he received a response to his appeal after filing this action. See Terry, 491 F. App'x 81, 83 ("The only facts pertinent to determining whether a prisoner has satisfied the PLRA's exhaustion requirement are those that existed when he filed his original complaint."); Womack v. Donald, No. 3:06-cv-59, 2006 WL 2598211, at *3 (S.D. Ga. Sept. 8, 2006) ("[T]he PLRA does not allow Plaintiff to exhaust administrative remedies while his case is pending."). For these reasons, I **RECOMMEND** the Court **DISMISS without prejudice** Plaintiff's Complaint.[7] Because I recommend that the Court dismiss Plaintiff's Complaint, I also **DENY as moot** Plaintiff's Motion to Preserve Evidence, doc. 8.

## CONCLUSION

For the reasons set forth above, I **RECOMMEND** the Court **DISMISS without prejudice** Plaintiff's Complaint, doc. 1, **DIRECT** the Clerk of Court to **CLOSE** this case and enter the appropriate judgment of dismissal, and **DENY** Plaintiff *in forma pauperis* status on appeal. I **DENY as moot** Plaintiff's Motion to Preserve Evidence, doc. 8.

---

[7] Hatch v. Burke Cty. Jail, No. 1:06-cv-080, 2006 WL 2660162, at *2 n.3 (S.D. Ga. Sept. 14, 2006) (recommending dismissal without prejudice when plaintiff failed to exhaust before filing suit because "if plaintiff can [later] exhaust his administrative remedies . . . he may proceed in a new civil action"); see also Shaw v. Upton, No. 6:16-cv-6, 2016 WL 4385855, at *2 (S.D. Ga. Aug. 15, 2016) (allowing plaintiff to bring a claim previously dismissed without prejudice for failure to exhaust in a prior lawsuit in a second lawsuit filed after plaintiff fully exhausted his administrative remedies).

The Court **ORDERS** any party seeking to object to this Report and Recommendation to file specific written objections within **14 days** of the date on which this Report and Recommendation is entered. Any objections asserting that the Magistrate Judge failed to address any contention raised in the Complaint must also be included. Failure to do so will bar any later challenge or review of the factual findings or legal conclusions of the Magistrate Judge. See 28 U.S.C. § 636(b)(1)(C); Thomas v. Arn, 474 U.S. 140 (1985). A copy of the objections must be served upon all other parties to the action.

Upon receipt of Objections meeting the specificity requirement set out above, a United States District Judge will make a de novo determination of those portions of the report, proposed findings, or recommendation to which objection is made and may accept, reject, or modify in whole or in part, the findings or recommendations made by the Magistrate Judge. Objections not meeting the specificity requirement set out above will not be considered by a District Judge. A party may not appeal a Magistrate Judge's report and recommendation directly to the United States Court of Appeals for the Eleventh Circuit. Appeals may be made only from a final judgment entered by or at the direction of a District Judge. The Court **DIRECTS** the Clerk of Court to serve a copy of this Report and Recommendation upon Plaintiff.

**SO ORDERED**, this 11th day of July, 2019.

_____
BENJAMIN W. CHEESBRO
UNITED STATES MAGISTRATE JUDGE
SOUTHERN DISTRICT OF GEORGIA